## NATIONAL LABOR RELATIONS BOARD
### v. VAN DEUSEN.
### No. 23.

Circuit Court of Appeals, Second Circuit.
Nov. 4, 1943.

Winthrop Johns, Atty., National Labor Relations Board, of Washington, D. C. (Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, and Howard Lichtenstein, Asst. Gen. Counsel, all of Washington, D. C., Richard A. Perkins, of Los Angeles, Cal., and Leslie J. Capek, of Washington, D. C., on the brief), for petitioner.

Henry Wise, of Boston, Mass. (A. H. Barenboim, of Boston, Mass., on the brief), for respondent.

Elias Lieberman, of New York City (Morris Isserman, of Newark, N. J., of counsel), for International Ladies' Garment Workers' Union, intervenor.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This case comes before us on petition of the National Labor Relations Board to enforce its decision and order of November 20, 1942, 45 N. L. R. B. 679, issued pursuant to § 10(c) of the National Labor Relations Act, 29 U.S.C.A. § 160(c), requiring respondent to reinstate two discharged employees with back pay, to make whole two others, to cease and desist from unfair labor practices, and to post the usual notices. The International Ladies' Garment Workers' Union, as intervenor, urges enforcement of the order.

Respondent is a manufacturer of children's garments at Cobleskill, New York, where he operates what is known as a "contract shop," processing certain materials furnished by another manufacturer, Tiny Town Togs, Inc., of Troy, New York, into garments which are then delivered to the latter company and, after further processing by it, are distributed to its customers. Respondent works only on a portion of the garments produced by Tiny Town; but the parties have stipulated that eighty per cent of all the cloth used by Tiny Town in 1941, the year in question, was purchased outside the State of New York, and that ninety per cent of its total sales represented goods sold and delivered outside the State of New York.

The first and major objection raised by the respondent is that he was not engaged in interstate commerce within the meaning of the Act, and hence that the Board was without jurisdiction to enter its order. He urges that, in view of the small proportion of the total Tiny Town work done by him, it is quite possible for all of the raw materials used by him to have come from within the state and for all the garments processed by him to have been sold within the state. But the stipulation of the parties cannot properly be thus construed. Its reasonable interpretation, as well as the natural assumption from the circumstances—no attempt at separation of the interstate and intrastate elements by Tiny Town being suggested—is that the materials received and garments delivered by respondent, however small a part of Tiny Town's total business, represented the same division of materials received from or delivered without the state as did that total business.

On this view of the facts, and although no exactly analogous case has been cited, we are clear that the Board had jurisdiction. It is well settled that the Act is applicable to a processor where the materials processed are moved to and from the processor by their out-of-state owner. N. L. R. B. v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226;

N. L. R. B. v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014. While Tiny Town here was also located in New York, the facts that the raw materials emanated from and the finished products were shipped into other states and that the work done was part of a continuing process of a single manufacturer present a sufficiently analogous situation to justify the conclusion that respondent was engaged in interstate commerce within the meaning of the Act.

■ But even if we should accept respondent's contention that none of the raw materials or finished garments of his plant ever entered interstate commerce, we think the same result would follow. A labor dispute limiting production in respondent's plant would necessarily tend to curtail and disrupt Tiny Town's interstate shipments by compelling Tiny Town to divert dresses from its interstate to its intrastate business. Such an impact of a labor controversy upon interstate commerce is within the remedial control of the Board. As was said in N. L. R. B. v. Cleveland-Cliffs Iron Co., 6 Cir., 133 F.2d 295, 300: "Curtailment of or interference with interstate commerce is a realistic and not an academic concept." Here we find the necessary ingredients according to current conceptions of interstate commerce and of national power.

■ Respondent also objects to the Board's findings of unfair labor practices in violation of § 8(1) and (3) of the Act, 29 U.S.C.A. § 158(1, 3), based upon attempts by him (which were quite successful) to use the occasion of a strike at Tiny Town to stop unionization in his own plant and upon his discriminatory discharges of four employees for union activities. On both points the findings are sustained by substantial evidence. Respondent's speech to his employees to the effect that if the Tiny Town strike failed and his plant was unionized then Tiny Town would send no more work and the shop would close down, the later speech by the treasurer of Tiny Town reiterating these sentiments, respondent's interest in the union meeting amounting to spying upon it, and the general hostility of respondent and his executive officers to the union—all support the finding that respondent interfered with, restrained, and coerced his employees, contrary to § 8(1). Discriminatory discharges, contrary to § 8(3), were shown as to a mother and her two daughters who were all active in the union organization and one other who, though less active, was one of the union recruits. Respondent claims to have laid these employees off because of lack of work; but when his busy season again commenced, he refused to rehire them and gave no reason for his actions, even upon request. Such circumstances, together with the evidence of his general anti-union attitude, justify the Board's conclusion that the discharges were because of the employees' union affiliations.

■ Respondent objects to the reinstatement order, first, because the statement of his attorney at the beginning of the hearing, as he contends, fulfilled his obligation to offer re-employment to the discharged employees. The statement was "that their positions are open for them and there will be positions open for them at any time they are ready and willing to return to work." Such a general and vague announcement at trial was hardly a specific offer to the employees of their old jobs to make an order unnecessary under the circumstances or to discharge respondent's duty to them. Secondly, respondent claims that reinstatement should not have been ordered, because the employees had obtained substantially equivalent employment and because the Board did not disclose how reinstatement would effectuate the policies of the Act. That substantially equivalent employment has been obtained does not bar a reinstatement order if the Board deems one necessary in order to effectuate the policies of the Act, Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 189–191, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217; and here the Board has ample findings of facts upon which to justify its determination that reinstatement is thus necessary. As was said in the Phelps Dodge decision, supra, 313 U.S. at page 197, 61 S.Ct. at page 854, 85 L.Ed. 1271, 133 A. L.R. 1217, "All we ask of the Board is to give clear indication that it has exercised the discretion with which Congress has empowered it."

■ Respondent finally contends that under the authority of N. L. R. B. v. Express Pub. Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930, no general cease and desist order should have been issued. Our views as to this issue have just been restated in N. L. R. B. v. Standard Oil Co., 2 Cir., 138 F.2d 885, decided November 1, 1943; we need only add that here direct violations

of both § 8(1) and (3) of the Act were shown.

The petition is granted.

L. HAND, Circuit Judge (concurring):

I concur in Judge Clark's opinion throughout except that I do not think it necessary to say whether the respondent would have been engaged in interstate commerce, even though none of the raw materials or finished garments ever entered interstate commerce. I do not dissent, but I prefer to reserve any decision upon that question.