**O. T. LINK, d/b/a Danville Detective Agency, Appellant,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Appellee.**

No. 9304.

United States Court of Appeals Fourth Circuit.

Argued Jan. 23, 1964.

Decided April 14, 1964.

Ira Lechner, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, James C. Paras, and Ira Lechner, Attys., N. L. R. B.), for appellee.

C. Stuart Wheatley, Danville, Va., for appellant.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

SOBELOFF, Chief Judge.

The owner of a detective agency here appeals from an adjudication of contempt for refusing to obey an order of the District Court requiring him to comply with a subpoena *duces tecum* of the National Labor Relations Board. The subpoena had been issued pursuant to section 11(1) of the National Labor Relations Act, 29 U.S.C.A. § 161(1), in the course of the Board's investigation of a charge filed by District 50, United Mine Workers of America, against the American Furniture Company. The union accused the company of violating section 8(a) (1) and (3) of the Act by discharging one of its employees, Clinton Meredith, for assisting a union representative, Everett Shrader, in an organizing campaign at the company's Martinsville plant. The union further charged that unnamed persons had followed Shrader during March, 1963, when he and Meredith were making house calls in the evening on company employees. Mere-

dith's discharge occurred later that month.

The Board's investigation disclosed that the appellant Link is the owner of the Danville Detective Agency, at whose direction his employees, V. Morton Woody and Curtis Ramsey, kept Shrader under 24-hour-a-day surveillance during March, 1963. When questioned, Link, Woody and Ramsey all refused to reveal the contents of the reports prepared in the course of the surveillance or the identity of the person who hired Link. The Board thereupon served the three with subpoenas *duces tecum* directing them to appear before the Board to give testimony and to produce "[a]ll reports, copies of reports, correspondence, copies of correspondence, and other documents and records in your custody in connection with or pertaining to the surveillance of Everett O. Shrader of Rocky Mount, Virginia." When they refused to comply with the subpoenas, the Board obtained orders from the District Court requiring them to appear in court with the records described and to "answer any and all questions relevant and material to the matters under investigation * * *."

At the hearing Ramsey and Woody testified that Link employed them to observe and report on Shrader's activities. They asserted that when they shadowed Shrader they were unaware of his affiliation with the union and did not know the identity of Link's client. Upon the advice of counsel they refused to produce copies of their reports to Link. Link likewise, on the advice of the same counsel, refused to submit the reports, even for the Judge's examination. In addition, he declined to divulge his client's name. Although admitting that the client informed him that Shrader was a union representative, Link testified that to his knowledge the American Furniture Company was not responsible, directly or indirectly, for placing Shrader under surveillance, and that it did not pay him for these services. He asserted his view that the information sought was irrele-

-vant to the investigation of the charge against the American Furniture Company, unless the Board could first show that the company "had anything to do with his being hired to follow Shrader."

The court, holding the information relevant, found the appellant in contempt. Inasmuch as Ramsey and Woody were merely employees and did not know the identity of the appellant's client, the proceedings were dismissed as to them.

Section 10(b) of the Act, 29 U.S.C.A. § 160(b), provides that whenever it is charged that any person has engaged in unfair labor practices, the Board, or any agent designated by it, "shall have the power to issue and cause to be served upon such person a complaint stating the charges * * *." Congress implemented this by providing in section 3(d) that the General Counsel, on behalf of the Board, shall have final authority "in respect of the investigation of charges and issuance of complaints under Section 10 * * *." To determine whether a charge is meritorious and requires the issuance of a complaint, the Board is clothed with the investigatory powers set forth in section 11 of the Act, 29 U.S. C.A. § 161:

"For the purpose of all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it by sections 9 and 10—

"(1) The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party sub-

penas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application. Within five days after the service of a *subpena on any person* requiring the production of any evidence in his possession or under his control, such person may petition the Board to revoke, and the Board shall revoke, such subpena if in its opinion the evidence whose production is required does not *relate to any matter under investigation, or any matter in question in such proceedings,* or if in its opinion such subpena does not describe with sufficient particularity the evidence whose production is required." (Emphasis added)

██ Plainly enough, this section gives the Board, "[f]or the purpose of all hearings and investigations," two separate powers. Under the first sentence, the Board may, without recourse to a subpoena, examine and copy evidence of "any person being investigated or proceeded against." By the second sentence, it is given the power to issue subpoenas "requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation * * *." We are in accord with the Seventh Circuit's interpretation that "[n]othing in the second sentence, which relates to the Board's subpoena power, limits that power to persons being investigated or proceeded against." N. L. R. B. v. Lewis, 310 F.2d 364, 366 (7th Cir. 1962).

██ The appellant concedes that the Board may utilize the investigatory subpoena power against parties to an unfair labor practices charge in aid of pre-complaint investigations.[1] The appellant likewise concedes that once a complaint has been issued a subpoena

---

1. N. L. R. B. v. Anchor Rome Mills, Inc., 197 F.2d 447 (5th Cir. 1952); N. L. R. B. v. Kingston Trap Rock Co., 222 F.2d 299 (3d Cir. 1955); N. L. R. B. v. Bar- rett Co., 120 F.2d 583 (7th Cir. 1941); cf. Menzies v. F. T. C., 242 F.2d 81 (4th Cir. 1957).

may be enforced against a witness who is not a party to the complaint.[2] His argument, however, is that a subpoena may not be enforced against a non-party *before* the issuance of a complaint. No reason is advanced to support his proposed limitation other than that no court has yet ruled to the contrary. There is, in fact, no case holding either way on the precise point, apparently because no such contention has ever been presented in any court. We think that the distinction advanced is meaningless.

■■■ To satisfy the objectives of the National Labor Relations Act, the administrative power to investigate must be permitted to be fully effective.[3] In conducting a pre-complaint investigation the Board is "more analogous to the Grand Jury."[4] Its power to subpoena is limited only by the requirement that the information sought must be relevant to the inquiry.[5]

■■ The union's charge is that American Furniture Company discharged its employee for engaging in protected union activity, and also that it violated the Act by following Shrader. N. L. R. B. v. Piedmont Wagon and Mfg. Co., 176 F.2d 695 (4th Cir. 1949). It was essential for the Board to determine whether the company was in fact responsible for the surveillance and whether it thereby became aware of its employee's union activities. When the Board learned that Link's detective agency had engaged in spying, the Board endeavored to find out at whose instance this was done. The company, it is true, denied any connection with Link's employment, but surely the Board's investigation cannot be ground to a halt by such a self-serving declaration.

Link testified that the company was not his client nor, to the best of his knowledge, the principal behind his client. If his argument were to prevail, that only after the Board has demonstrated a connection between the company and his employment may he be required to disclose the name of his client, the investigation would be unnecessary and useless. This would reduce the process of investigation to a farce. It is unreasonable to the extreme to insist that the result shall be in hand before an investigation may begin. Knowledge of the identity of the client is highly relevant because only thereby can the Board determine whether the conduct complained of was attributable to the company.

It is not unknown for the person instigating the activity of a private detective to hide his identity by interposing a go-between to make the necessary arrangements. The object is to enable both the investigator and his true employer to conceal their relationship. The inquiry of an authorized administrative agency is not to be thwarted by such expedients. All the facts may be brought to light.

The District Court's judgment holding the appellant in contempt is

Affirmed.

---

2. N. L. R. B. v. Lewis, 310 F.2d 364 (7th Cir. 1962); F. T. C. v. Tuttle, 244 F.2d 605 (2d Cir. 1957); Bland Lumber Co. v. N. L. R. B., 177 F.2d 555 (5th Cir. 1949).

3. 1 Davis, Administrative Law Treatise § 3.01 et seq. (1958).

4. United States v. Morton Salt Co., 338 U.S. 632, 642, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950).

5. United States v. Morton Salt Co., supra; Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 509, 63 S.Ct. 339, 87 L.Ed. 424 (1942).