**NATIONAL LABOR RELATIONS BOARD, Applicant,**

v.

**E. Bruce HARVEY, Respondent.**

**Civ. No. 64-C-12-L.**

United States District Court
W. D. Virginia,
Lynchburg Division.

Sept. 17, 1964.

The National Labor Relations Board was represented by David C. Sachs, Regional Atty., N. L. R. B., and Edwin J. Gutman, Atty., N. L. R. B., Baltimore, Md.

Harvey was represented by S. Bolling Hobbs, Caskie, Frost, Davidson & Watts, Lynchburg, Va.

BARKSDALE, District Judge.

This matter is before me upon a rule issued at the instance of the National Labor Relations Board (hereinafter called the "Board") on June 23, 1964, by Honorable Ted Dalton, Chief Judge of this District, requiring respondent, E. Bruce Harvey, an attorney at law of Altavista, Virginia, to appear and show cause, if any there be, before this court on July 9, 1964, why an order of this

court should not issue directing him "to appear before this court and John A. Penello, Regional Director, Fifth Region of the Board, at such time and place as this court and the said John A. Penello may determine, and there produce the books, papers, records and other data described in the *subpena* (sic) *duces tecum* served upon Respondent and give testimony in connection with the proceeding now pending before the Board pursuant to Section 10(b) of the National Labor Relations Act, * * *". At the request of Judge Dalton, I held this hearing, at which the Board appeared by Penello, its Regional Director and its counsel, and respondent Harvey appeared with his counsel. The Board relying upon its application for the rule, with exhibits attached, and the affidavit of Penello theretofore filed, introduced no evidence. Respondent Harvey appeared with his counsel and testified briefly. He declined to reveal the identity of his client or answer other questions unless ordered by the court to do so. I took the matter under advisement, and thereafter, the Board, by counsel, filed its memorandum in support of its contention, respondent by counsel filed his memorandum, and also, by leave of court, filed his affidavit; thereafter, the Board, by counsel, filed its objections to certain portions of respondent's affidavit, all of which I have now carefully considered. Since everything to which respondent testified at the hearing is included in his affidavit, it seems that the factual situation upon which I must decide this controversy must be derived from the application of the Board for the rule to show cause, with its exhibits, the affidavit of Penello, and the affidavit of respondent, together with the opinion of our Court of Appeals in Link v. N. L. R. B., 4 Cir., 330 F.2d 437, which was rendered April 14, 1964, in a matter closely related to this one.

Briefly stated, the facts seem to be as follows:

On March 22, 1963, District 50, United Mine Workers of America, filed a "Charge Against Employer", charging American Furniture Company of Martinsville, Virginia, with unfair labor practices within the meaning of Section 8(a), subsections (1) and (3), of the National Labor Relations Act, specifically that "The above Company discharged Clinton Meredith, one of its employees. Mr. Meredith was very active in assisting with the Union organizing campaign in the above plant. He was traveling with the representative on his off duty time making house calls on fellow workers. There have been persons following the representative checking on his activities and also checking on the homes where he and Meredith were making calls on other American Furniture Company employees." On July 15, 1963, a similar charge was filed alleging that "On March 14, 1963, the abovenamed company fired John R. Owens due to his activities on behalf of District 50, United Mine Workers of America. District 50 was conducting an organizing campaign at the abovenamed plant during March of 1963, and has been continuing its activities, but on a much slower basis, since Meredith and Owens were fired." The Board began an investigation of these charges under the direction and supervision of Penello. The investigation disclosed that in February and March, 1963, one Shrader, a representative of District 50 U.M.W.A., was undertaking to organize the employees of American Furniture Company in Martinsville, visiting its employees and undertaking to persuade them to designate District 50 as their representative. During this period, Shrader visited Meredith and Owens, then employees of American Furniture Company. During the week of March 4–11, 1963, one O. T. Link, a private detective of Danville, undertook an investigation of Shrader's activities, placing him under constant surveillance during that week. Link made a written report of his investigation to respondent Harvey, who had employed him for a client. After the decision in Link v. N. L. R. B., supra, had been rendered, a copy of this report was delivered on May 25, 1964, to the Regional Attorney

of the Board by Link's counsel. When Penello · discovered that Link's agency had had Shrader under surveillance in March 1963, he questioned Link and his employees, and at their refusal to answer questions, the Board served them with subpoenas *duces tecum* directing them to appear before the Board to give testimony and produce all reports and other documents pertaining to the surveillance. Link and his employees refused to comply with the subpoenas, so, at the instance of Penello, Judge Dalton issued a rule against them to appear in court with their records and to "answer any and all questions relevant and material to the matters under investigation * * * ". Link and his employees appeared to answer the rule, but upon the advice of counsel, C. Stuart Wheatley, Esquire, of Danville, they refused to submit their reports, or to divulge his client's name, asserting that "to his knowledge, the American Furniture Company was not responsible for placing Shrader under surveillance, and that the information sought from him was irrelevant." Judge Dalton, holding the information relevant, held Link in contempt of court. Upon Link's appeal from the order finding him in contempt, our Court of Appeals affirmed Judge . Dalton's judgment holding Link in contempt, rendering, on April 14, 1964, the opinion previously referred to, Link v. N. L. R. B., 330 F.2d 437.

In the matter now before me, respondent Harvey admits that he employed Link to place Shrader under surveillance and report to him on his activities, but denies that this was done for American Furniture Company. Also American Furniture Company has denied any connection with Link's employment.

Respondent contends that he should not be required to comply with the subpoena *duces tecum* served upon him, because to do so would be to betray the confidence reposed in him by a client in the course of an attorney-client relationship. It appears from respondent Harvey's affidavit that he is a graduate of the Law School of Washington & Lee University, qualified to practice in all the courts of the Commonwealth of Virginia, as well as in the Supreme Court of the United States, that he is a member in good standing of the Virginia State Bar, the Virginia Bar Association, and the American Bar Association; that he has been engaged in the general practice of law in the Town of Altavista since 1950, and since 1955 has been a member of the firm of Arthur & Harvey of Altavista, which firm is engaged in the general practice of law, both civil and criminal, including trial of damage suits, domestic relations, corporate, banking and real estate practice, and investigations in connection therewith; that in February or early March 1963, a longtime, regular and continuing client of the firm of Arthur & Harvey, for which client that firm has performed legal services of a varied nature, both before and since, did, in confidence, and not in the . presence of others, and with the distinct understanding that client's name would not be revealed in connection therewith, engage the services of the firm in the securing of certain information of importance to the client in the lawful conduct of his affairs, and, in carrying out the services for which the firm was employed, respondent, without revealing. the name or purposes of the client, engaged O. T. Link to investigate the activities of Shrader, who was then living or staying at Rocky Mount, Virginia, which investigation covered the week, March 4–11, 1963, and resulted in a written report delivered to respondent, and in which report there was included the information that Shrader had visited the homes of Meredith and Owen; that the client was not the American Furniture Company of Martinsville or any person, firm or individual employed, or in any way connected with, that Company; that no information contained in the report has been revealed by respondent or his partner to American Furniture Company, or anyone other than the client; that respondent has every reason to believe that his client has no connection of any kind, nor has acted in

behalf of the American Furniture Company, or that Link's report, or anything in it, has been passed on to American Furniture Company.

It further recited in respondent Harvey's affidavit that the employment of respondent's firm, and the resulting investigation by Link of Shrader, under its direction, were not for the purpose of interfering with, restraining or coercing any employee of the American Furniture Company, or any other employees, in the exercise of the rights guaranteed them in Section 7 of the National Labor Relations Act, or in violation of Section 8(a) (1) of the Act. Nor had the investigation of Shrader any connection with any criminal or fraudulent matter, nor, in the considered opinion of respondent, were they unlawful or in violation of the Act or any other law or statute. Further, that it was definitely considered by both the client and respondent's firm that his identity and all communications between client and attorneys should be strictly confidential, and that the client has declined to consent to disclosure of his name or any communications between him and his attorney, and that respondent sincerely believes that it would violate his professional ethics, and that in his considered judgment, if revealed, the information sought by the Board would be of no aid or assistance to it for the purpose of its investigation of the charges against American Furniture Company.

Respondent's counsel contends that, upon the facts as they now appear, the information sought by the Board from respondent is not relevant. However, I believe that the opinion of our Court of Appeals in Link v. N. L. R. B., supra, has put at rest all questions of relevancy, and affirms the subpoena powers of the Board in cases such as this; and that the only question before me is whether or not the confidential relationship of attorney and client under the circumstances existing here justifies respondent in his claim of privilege against giving the information sought by the Board. I am of the opinion that respondent may not

be required to give the information sought by the Board, for reasons which will presently appear.

Much has been written about the confidential nature of communications between attorney and client, and many courts have been called upon to determine whether, under varying circumstances, the attorney has the privilege of not being required to divulge the secrets of his client.

"The policy of the privilege has been plainly grounded. since the latter part of the 1700's on subjective considerations. In order to promote freedom of consultation of legal advisors by clients, the apprehension of compelled disclosure by the legal advisers must be removed; hence the law must prohibit such disclosure except on the client's consent." 8 Wigmore (McNaughton's revision), Sec. 2291, p. 545.

As was said in Colton v. United States, 306 F.2d 633, 636:

"This court has accepted, and few if any lawyers would quarrel with, Dean Wigmore's statement of the basic principle underlying the attorney-client privilege; * * * ".

■ Ordinarily, the identity of a client, or the fact that a given individual has become a client, are matters which an attorney may not refuse to disclose. Mauch v. Commissioner of Internal Revenue, 3 Cir., 113 F.2d 555, 556, United States v. Pape, 7 Cir., 144 F.2d 778, 782. However, there may be circumstances under which the identification of a client may amount to the prejudicial disclosure of a confidential communication; as where the substance of a disclosure has already been revealed, but not its source. Chirac v. Reinicker, 24 U.S. 278, 6 L.Ed. 474 and Baird v. Koerner, 9 Cir., 279 F.2d 623, 95 A.L.R.2d 303.

The case of Baird v. Koerner, supra, seems particularly interesting and analogous to the situation here presented. Appellant Baird was a duly qualified Los Angeles attorney and highly competent as a tax specialist, having served for

five years as Regional Counsel for the Pacific Division of the Internal Revenue Service. At the instance of certain accountants, he gave advice concerning a certain undisclosed taxpayer's income tax situation. Although no investigation had been made, or was being made, by the government, the accountants had determined that the taxpayer's returns were incorrect and the taxes understated. A little later, taxpayer's general attorney came to appellant's office in Los Angeles and discussed with him in detail the facts and circumstances of the case. After a thorough discussion of procedural steps and of the moral, legal and tactical advantages of making payment of the tax then due, but without disclosing the identity of the taxpayer, the attorney delivered to Baird the sum of $12,706.85, which had been determined by the accountants to be the amount of the tax due, with interest. Baird transmitted this sum to the Bureau of Internal Revenue without disclosing the name of the taxpayer. Taxpayer's general counsel paid Baird a fee commensurate with the value of his services.

Appellee Koerner, Special Agent of the Internal Revenue Service, procured a subpoena against Baird and sought to have him disclose the identity of his clients, which Baird refused to do, and the District Court held him in contempt. Specifically Baird was asked, and refused to answer, as to the "identity and addresses of each and every person who employed appellant in connection with his transmittal of a cashier's check in the sum of $12,706.85 to the Director of Internal Revenue at Baltimore, Maryland." Baird based his refusal on various grounds, but primarily on the privilege existing between attorney and client. The court considered as the one real issue: "Is there here a valid claim of the attorney-client privilege?" The court held that Baird's claim of privilege was valid, and reversed the judgment of contempt entered against him by the District Court.

In the situation here presented, I have do doubt that respondent had a client,

that his actions were in the course of an attorney-client relationship, and that to disclose the identity of his client would be an unjustified breach of confidence.

Respondent's counsel contends that the law of the forum—Virginia—should properly control the nature and extent of the attorney-client privilege and should be applied in this case. There is some support for this contention in the authorities. Baird v. Koerner, supra, Garrison v. General Motors Corporation, D.C., 213 F.Supp. 515; 35A C.J.S. Federal Civil Procedure § 521, p. 777:

"On the question of privileged communications, the federal courts follow the law of the state of the forum."

There is no Virginia statute on the subject, but the Canons of Ethics of the American Bar Association have been adopted for Virginia. Canon 37, "Confidences of a Client", is applicable as follows:

"It is the duty of a lawyer to preserve his client's confidences. This duty outlasts the lawyer's employment, and extends as well to his employees; * * *"

The Supreme Court of Appeals of Virginia has had the question before it in a number of cases. In Clay v. Williams, 16 Virginia (2 Munford) 105, 122, the court said:

" * * * The settled law upon this subject is, that counsel or attorneys, so far from being obliged, are not permitted to give evidence of such matters as come to their knowledge in the way of their profession; that this principle extends even to scriveners acting as attorneys in any particular transaction; nay, even to interpreters going between the attorney and his client; that this is not the privilege of the counsel, &c., but of the client; without which it would be impossible that any business could be done with safety; that a court will even stop a witness of this class seeming desirous or disposed to reveal confidential commu-

nications; and that courts of equity will refer the depositions of such witnesses to a master, to expunge so much thereof as shall be found to be of this character. (Such reference was not necessary in the case before us, as the whole of the testimony contained in the deposition is of that character.) All these positions are to be found in 2 Bac. 579, and the cases there cited; they are bottomed upon the soundest propriety, and go to the utter exclusion of the testimony of Mr. M'Robert in the case before us. * * *"

Again, in Chahoon v. The Commonwealth, 62 Virginia (21 Grattan) 822, 836, the court said:

"* * * There is no rule of law better settled than 'that a counsel, solicitor or attorney shall not be permitted to divulge any matter which has been communicated to him in professional confidence.' In these words is the rule laid down in 2 Starkie on Evidence, page 395; and that excellent law writer further says: 'This is the privilege of the client, and is founded on the policy of the law, which will not permit a person to betray a secret which the law has entrusted to him.' 'With respect to such communications, the mouth of the witness is forever sealed, and he cannot reveal them at any time, or in any proceeding, although the client be no party to it, however improbable it maybe under the circumstances, that any injury can result to him from the disclosure, and although the relation of attorney and client has ceased by the dismissal of the attorney.' To the same effect is the rule laid down in 1 Phillips on Evidence, 106 and seq., and 1 Greenleaf on Evidence, Sec. 237 and seq. * * *"

However, it seems to me that it is of little moment whether I should seek to ascertain and apply the Virginia law here, or whether I undertake to follow the guidelines to be found in the decisions of the federal courts. As it seems to me that the criteria are so similar, I deem it unnecessary to determine whether the Virginia rule or the rule deducible from the federal decisions should be applied. The formulation of the criteria to be considered by a federal court, in United States v. United Shoe Machinery Co., D.C., 89 F.Supp. 357, 358–359, referred to in Colton v. United States, supra, 306 F.2d page 637, as "Judge Wyzanski's much quoted formulation", is as follows:

"'(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.' * * *"

The Board, by its counsel, contends that respondent's activities did not come within the attorney-client privilege, because his employment was "for the purpose of committing a crime or tort; * * *" Of course, Link's activities did not constitute a crime, but counsel contends that his activities did constitute a tort. It is true, as respondent's counsel points out, that nowhere in the Act does there appear any specific inhibition of surveillance of employees or Union organizers. Section 8(a) (1) of the Act does provide that:

"(a) It shall be an unfair labor practice for any employer—(1) to interfere with, restrain or coerce employees in the exercise of the rights guaranteed in Section 7; * * *",

that is, the right to organize. Surveillance has frequently been mentioned by

the courts as an unfair labor practice, but usually, in connection with other acts of interference or coercion. Republic Steel Corp. v. N. L. R. B., 3 Cir., 107 F.2d 472, N. L. R. B. v. VanDeusen, 2 Cir., 138 F.2d 893. As to these and other similar cases, respondent's counsel says:

"We have no quarrel with the holdings in these cases, and if Respondent's client was the American Furniture Company that the labor organizer was attempting to organize, or was an employee or agent of the American Furniture Company, he would, if the surveillance of the labor organizer did, in fact, interfere with, restrain or coerce said employees in the exercise of their protected rights, be guilty of violating the Act."

It would seem that in N. L. R. B. v. Collins & Aikman Corp. (4th Cir.), 146 F.2d 454, 455, our Court of Appeals held that surveillance without more was a violation of the Act. The court said:

"We think, accordingly, there was substantial evidence to support the Board's finding of surveillance. Nor does it avail Collins to assert that whatever surveillance existed was carried out openly and not surreptitiously. Any real surveillance by the employer of the Union activities of employees, whether frankly open or carefully concealed, falls under the prohibitions of the Act."

It would seem to me that surveillance by the employer over the Union activities of his employees, or of a Union organizer attempting to organize such employees, falling "under the prohibitions of the Act", would be tortious, even though there be no penal sanctions for such conduct.

However, to fall within the "prohibition of the Act", the surveillance must have been done by, or at the instance of, the employer of the employees sought to be organized, in this case the American Furniture Company. So far as we are here concerned, American Furniture Company is the only employer under investigation. It might well be that in its consideration of Link v. N. L. R. B., supra, notwithstanding the denial of American Furniture Company of any connection with Link's employment, our Court of Appeals was definitely under the impression that Link's employment and activities were directly or indirectly brought about by American Furniture Company. More facts have been elicited since the decision in the Link case. From respondent's affidavit, it now appears to me that respondent's client, for whom he employed Link, was not the American Furniture Company, but was a "long-time, regular and continuing client of the firm of Arthur & Harvey, for which client said firm has performed and furnished legal services of a varied nature, both before and since, that he was not employed or in any way connected with American Furniture Company, and that no information obtained by Link for him has been revealed by respondent to American Furniture Company, or any officer, agent or employee thereof. * * * ", and further, that respondent has "every reason to believe that said client has no connection of any kind, has not acted as agent for, and has not revealed any information contained in Mr. Link's report to the American Furniture Company, or any officer, agent or employee thereof."

Consequently, from the factual situation before me, it does not appear that respondent has engaged in, or brought about, any activity falling within "the prohibition of the Act".

From the foregoing, it follows that the Board's prayer for an order directing respondent E. Bruce Harvey to appear and produce the books, papers, records and other data described in the subpoena *duces tecum* heretofore served upon him and give testimony in connection with the proceeding now pending before the Board, will be denied.