**NATIONAL LABOR RELATIONS BOARD, Applicant,**

v.

**J. Bruce HARVEY, Respondent.**

**Civ. No. 64–C–12–L.**

United States District Court
W. D. Virginia,
Lynchburg Division.

Feb. 15, 1966.

David C. Sachs, Reg. Atty., George B. Driesen, Atty., Washington, D. C., and Edward J. Gutman, Baltimore, Md., for applicant.

S. Bolling Hobbs, Lynchburg, Va., for defendant.

BARKSDALE, District Judge.

Pursuant to the mandate of the Court of Appeals on the remand of this case to this court, N. L. R. B. v. Harvey, 349 F.2d 900, a full evidentiary hearing was held on February 9, 1966, to enable this court to determine whether or not an attorney-client relationship existed which justified the refusal of respondent, E. Bruce Harvey, to obey the subpoena duces tecum heretofore issued and served on him by the National Labor Relations Board.

In compliance with Rule 52(a), F.R. Civ.P., this Court does hereby find the facts specially and state separately its conclusions of law thereon, as follows:

FINDINGS OF FACT.

In February and March, 1963, respondent, E. Bruce Harvey, then forty three years of age, a graduate of Washington & Lee University Law School, was a duly qualified attorney at law engaged with a partner in the general practice of law in the Town of Altavista, Virginia, under the firm name of Arthur and Harvey.

He had been engaged in the general practice of law since 1950. Neither he nor his firm, in February and March 1963, represented, had previously represented, nor since represented, as attorneys or in any capacity, American Furniture Company of Martinsville, Virginia, whose employees, in the Spring of 1963, District 50 United Mine Workers of America were seeking to organize.

In the latter part of February 1963, a representative of a competitor of American Furniture Company, with which it had no business connections at all, came to see respondent Harvey. This individual or company had been a continuous client of the law firm of Arthur and Harvey for at least eight years and has so continued. His client's representative told Harvey that "his plant was under organization by a labor union and he wanted advice from us as to what steps he could take in opposition to his plant being organized." He was pretty excited about it. Upon being asked by Harvey how he knew his plant was being organized, the client told him that "he had information that a labor organizer had established residence in the general area of his plant operations and that was enough for him to think that his plant was being organized." This immediately brought to Harvey's mind (as he put it) that "employer-employee relationships are in a nebulous area when it comes to union organization, and as to what an employer can say, how he can say it, when he can say it, etc., and also when a plant is being organized, or when a plant is not being organized, is very nebulous, too, in labor practice as to what an employer can do, and it was in this area that he assumed that he would be giving him advice." Harvey suggested to his client that the "employment of a detective would be the best means to find out actually whether he was being organized or not." The client agreed, so Harvey employed one O. T. Link, a private detective of Danville, Virginia, near the end of February or the first of March, 1963, without identifying to him the client for whom he would be making

the investigation, and directed him to find out the activities of Mr. Shrader, the organizer for the United Mine Workers, then operating in Rocky Mount, Virginia, and vicinity, in that area, and any other area in which he might be found to be operating. Link kept Shrader under surveillance for one week, March 4–March 11, 1963, and made a written report of his activities to Harvey, who delivered a copy thereof to his client. A copy of this report was delivered to the Regional Attorney of the National Labor Relations Board on May 25, 1964. This report was not delivered to American Furniture Company, nor were its contents communicated to it or any of its representatives by Harvey, nor, so far as he knows, by anyone else. Upon his examination of the report by Harvey's client, it appeared that Shrader had not been in contact with any of the client's employees, so Harvey advised his client "that that was real good, and that was the end of it."

During conversations between the client, Mr. Harvey and his partner Mr. Arthur, no one else was present. Mr. Harvey has sought his client's consent to reveal the nature of the employment and the communications between them, and the client has not consented that such be revealed.

## CONCLUSIONS OF LAW.

From the facts found, this court concludes that, in this instance, the attorney-client privilege existed, protects Harvey, and constitutes legal justification for his refusal to reveal the identity of his client, or to give other information sought by the National Labor Relations Board in its subpoena duces tecum served upon him.

The definition of the attorney-client privilege found in United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358 (D.C.Mass.1950), has been often quoted and seems to be generally accepted as authoritative. It is my conclusion that the situation here definitely falls within this definition. To paraphrase:

(1) Harvey's client, the asserted holder of the privilege, was a client;

(2) the person to whom the communication was made, Harvey, (a) was a member of the bar of this court and all the courts of the Commonwealth of Virginia, and (b) in connection with his communication with his client, Harvey was acting as a lawyer;

(3) the communication related to facts of which Harvey, the attorney, was informed (a) by his client, (b) without the presence of strangers, (c) for the purpose of securing advice or an opinion on law, not (d) for the purpose of committing a crime or tort; and

(4) the privilege has been (a) claimed, and (b) not waived by the client.

For the historical background of this case and prior proceedings herein, see Link v. N. L. R. B., (C.A.4), 330 F.2d 437; N. L. R. B. v. Harvey (D.C.,W.D. Va.), 235 F.Supp. 580, and N. L. R B v. Harvey, 4 Cir., 349 F.2d 900.

It follows that the application of National Labor Relations Board for an order requiring Harvey to appear before this court and the Regional Director of the Board and there produce the documents described in their subpoena duces tecum and give testimony in connection therewith, will be denied, the rule to show cause will be discharged, and the subpoena duces tecum will be quashed.