**NATIONAL LABOR RELATIONS BOARD, Applicant,**

v.

**The EVANSVILLE COURIER CO., Respondent.**

No. Misc. 96–3–EV.

United States District Court,
S.D. Indiana,
Evansville Division.

Aug. 28, 1996.

James E. Murphy, Edward C. Verst, Region 9, NLRB, Cincinnati, OH, for Applicant.

Wm. Michael Schiff, Ziemer Stayman Weitzel & Shoulders, Evansville, IN, for Respondent.

### ORDER

BROOKS, District Judge.

This matter is before the Court on the Magistrate Judge's Report and Recommendation Upon the Application for Order Requiring Obedience of Subpoena Duces Tecum entered August 2, 1996. No objections have been filed to the Magistrate Judge's Report and Recommendation.

The Court, being duly advised, hereby adopts the Magistrate Judge's Recommendation herein. The Respondent is ordered to comply with the subpoena and to produce the information sought by the Board within ten (10) days of the date of this order.

1. Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(B), the Magistrate Judge has been assigned, without the consent of the parties, to hear a pre-trial matter dispositive of a claim or defense of a party. The parties are referred to that rule for the procedure to file objections to this Report and Recommendation. Such objections must be served within ten (10) days after being served with a copy of this Report and Recommendation.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION UPON THE APPLICATION FOR ORDER REQUIRING OBEDIENCE OF SUBPOENA DUCES TECUM

HUSSMANN, United States Magistrate Judge.

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge,[1] upon Application of the National Labor Relations Board (herein called the "Board") for an order requiring obedience to a subpoena duces tecum issued by the Board to The Evansville Courtier Co. (herein called "Respondent") on March 14, 1996.[2] The respondent filed an Opposition to the Board's Application on June 10, 1996. The Board's Memorandum in Response to the Opposition was filed June 21, 1996. A Reply to the Board's Memorandum in Response was filed June 28, 1996, and then the Board filed its Reply Memorandum on July 15, 1996. Jurisdiction of the Court is invoked under the National Labor Relations Act (herein called the "Act"), 29 U.S.C. § 161(2).

### I. Facts:

The following facts, as tendered in the Board's Memorandum in Support, are not in dispute:

Respondent is a general circulation newspaper published in Evansville, Indiana. On the following dates, its classified section contained the following advertisements:

1. June 1, 1995 and June 4, 1995:

 ELECTRICIAN—Licensed, residential, light commercial. Send resume in care of: The Evansville Courier Co., Box 35208, 300 E. Walnut Street, Evansville, IN 47713.

2. June 4, 1995:

2. The Board also submitted a "Memorandum in Support of Application for Order Requiring Obedience to Subpoena Duces Tecum" which the Magistrate Judge notes has not been filed of record. The Clerk of Court is therefore **ORDERED** to file the Board's memorandum (copy attached) of record as of May 16, 1996 (*nunc pro tunc*).

ELECTRICIAN—Licensed, residential, light commercial. Send resume in care of: The Evansville Courier Company, Box 35211, 300 E. Walnut Street, Evansville, IN 47713.

3. June 22, 1995:

ELECTRICIAN—Industrial experience necessary. Send resume in care of: The Evansville Courier Company, Box 35270, 300 E. Walnut Street, Evansville, IN 47713.

4. June 25, 1995:

ELECTRICIANS NEEDED—Send replies in care of: The Evansville Courier Company, Box 35214, 300 E. Walnut Street, Evansville, IN 47713.

Several members of Local No. 16, International Brotherhood of Electrical Workers, AFL–CIO (herein called the "Union"), responded to these ads, but were not offered employment. Thereafter, the Union filed charges with Region 25 of the Board alleging that the applicants were unfairly denied employment because of their union membership in violation of the Act. Pursuant to standard procedures, the charges were docketed and an agent of Region 25 was assigned to investigate.

As part of the investigation, the Board agent attempted to obtain the identity of the employer or employers who placed the help-wanted ads, but Respondent refused to disclose the name or names of the entities who placed the ads.

Because Respondent refused to voluntarily cooperate in the investigation of the above-described charges, the Board issued a subpoena on March 14, 1996 (attached to the application for enforcement) seeking the names and addresses of the entities who placed the ads. The subpoena was issued in the form and manner required by regulations found at 29 C.F.R. § 102.31 and in compliance with NLRB Rules. The Respondent refused to comply with the subpoena, and on March 22, 1996, filed a Petition to Quash the subpoena with the Board. On April 10, 1996, the Board denied the Petition to Quash. The Respondent having failed to comply with the subpoena, the Board filed its Application with this Court for an order to require obedience to the subpoena on May 16, 1996.

## II. Conclusions of law which relate to the Board's authority to issue and the Court's authority to enforce subpoenas:

To reach a final recommendation, the Magistrate Judge has reviewed certain legal principals which he found relevant to the analysis. Those principles are as follows:

1. To aid the Board in the investigation of charges filed pursuant to Sections 7 and 10 of the Act [29 U.S.C. § 157 and § 160, respectively], the provisions of Section 11 [3] of the

---

3. Sec. 11. For the purpose of all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it by section 9 and section 10—

(1) The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpoenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application. Within five days after the service of a subpoena on any person requiring the production of any evidence in his possession or under his control, such person may petition the Board to revoke, and the Board shall revoke, such subpoena if in its opinion the evidence whose production is required does not relate to any matter under investigation, or any matter in question in such proceedings, or if in its opinion such subpoena does not describe with sufficient particularity the evidence whose production is required. Any member of the Board, or any agent or agency designated by the Board for such purposes, may administer oaths and affirmations, examine witnesses, and receive evidence. Such attendance of witnesses and the production of such evidence may be required from any place in the United States or any Territory or possession thereof, at any designated place of hearing.

(2) In case of contumacy or refusal to obey a subpoena issued to any person, any United States district court or the United States courts of any Territory or possession, within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts busi-

Act [29 U.S.C. § 161] vest in the Board the authority to issue and serve subpoenas, requiring the attendance and testimony of witnesses and/or the production of evidence and further provide for the enforcement of such subpoenas, upon application by the Board, by the district courts of the United States within the jurisdiction wherein the inquiry is held. Thus, this Court has jurisdiction to issue appropriate orders requiring compliance with said subpoena inasmuch as the Board investigation is being carried on in Evansville, Indiana, within the jurisdiction of this Court.

2. In *Endicott Johnson Corporation v. Perkins,* 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943), the United States Supreme Court discussed the scope of district court enforcement of administrative subpoenas. That case held that the district court does not have the authority to condition the enforcement of administrative subpoenas upon an evidentiary showing by the Secretary of Labor *to the Court* that the information sought by the subpoena would establish a violation of the Act there at issue. The Supreme Court's decision in *Endicott* is often cited for the proposition that a district court has a limited scope of review when it is presented with a request to enforce an administrative subpoena. However, the closing paragraph of *Endicott* states:

> The subpoena power delegated by the Statute *as here exercised* is so clearly within the limits of Congressional authority that it is not necessary to discuss the constitutional questions urged by the petitioner, and on the record before us the cases on which it relies are inapplicable and do not require consideration. (Emphasis added; footnotes omitted.)

*Id.* at 510, 63 S.Ct. at 344.

The dissenting opinion by Justice Murphy more specifically addresses what a district court is required to do when faced with a subpoena enforcement proceeding. The following paragraph from his dissent is instructive:

> ness, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered, or

The Government concedes that the district courts are more than mere rubber stamps of the agencies in enforcing administrative subpoenas and lists as examples of appropriate defenses, claims that a privilege of the witness, like that against self-incrimination, would be violated; or that the subpoena is unduly vague or unreasonably oppressive; or that the hearing is not the kind authorized; or that the subpoena was not issued by the person vested with the power; or that it is plain on the pleadings that the evidence sought is not germane to any lawful subject of inquiry. (Footnotes omitted.)

*Id.* at 512, 63 S.Ct. at 345.

The Magistrate Judge concludes from the language in *Endicott* that while the district court must give substantial deference to an administrative agency's determination that the subpoena issued is within the scope of the agency's authority, the district court is not precluded from considering whether there is some privilege which may be raised as a defense to the subpoena.

3. Pursuant to Section 10 of the Act [29 U.S.C. § 160(b)], proceedings before the Board "shall, so far as practical, be conducted in accordance with the rules of evidence applicable in the district court of the United States under the rules of civil procedure for the district courts of the United States...."

4. Federal Rule of Civil Procedure 26(b)(1) defines relevant evidence for the purposes of discovery as including the "identity and location of persons having knowledge of discoverable matters."

5. Federal Rule of Evidence 501 provides:

> Except as otherwise provided by the Constitution of the United States ... the privilege of a witness ... shall be governed by the principles of common law as they may be interpreted by the courts of the Untied States in the light of reason and experience.

> there to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof.

6. The Board has the power to subpoena documents in the possession of a third party which has not been accused of violating the Act. See *O.T. Link v. NLRB*, 330 F.2d 437 (4th Cir.1964) (citing *NLRB v. Lewis*, 310 F.2d 364 (7th Cir.1962), where the Board sought to obtain records of a detective agency hired to engage in the surveillance of union activists).

7. In *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the United States Supreme Court considered whether federal law recognizes a testimonial privilege granted to journalists by virtue of the First Amendment. The Supreme Court declined to establish such a privilege. *Id.* at 690, 92 S.Ct. at 2661. In *Branzburg*, the issue before the Court was whether a newspaper reporter could be compelled by subpoena to testify before a grand jury and be required to disclose confidential sources and information. In concluding that a journalist could be so compelled, the Court found that at common law a journalist had no privilege to refuse to appear before a grand jury. The Court also cited to a Second Circuit case for the proposition that a journalist is not exempted from compelled disclosure of information pursuant to a subpoena in a civil suit. *Id.* at 686, 92 S.Ct. at 2659. There is no indication in *Branzburg* that the Supreme Court recognized the existence of any privilege of a journalist to refuse to comply with an administrative subpoena.

8. In *Associated Press v. National Labor Relations Board*, 301 U.S. 103, 57 S.Ct. 650, 81 L.Ed. 953 (1937), the United States Supreme Court held that the National Labor Relations Board had jurisdiction over the Associated Press, a "membership corporation" composed of newspaper representatives. The Supreme Court in that case rejected the Associated Press' argument that regulations of the Associate Press' employment practices abridged freedom of press guaranteed by the First Amendment because the NLRB imposes restrictions on the manner in which the Associated Press could discharge editorial employees. *Id.* at 130–33, 57 S.Ct. at 654–56. This case indicates to the Magistrate Judge that, as a general rule, the provisions of the National Labor Relations Act, including enforcement mechanisms, apply to newspapers or news gathering organizations.

9. In *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946), the United States Supreme Court discussed important issues concerning the judicial enforcement of administrative subpoenas directed towards newspapers. In that case, the issue was whether newspaper publishing corporations were required to comply with a *subpoena duces tecum* issued by the Administrator of the Wage and Hour Division of the Department of Labor. Among other arguments raised by the newspapers, was the argument that the First Amendment "knocked out" application of the Fair Labor Standards Act to the business of publishing and distributing newspapers. The Supreme Court rejected this defense and concluded that the newspapers were required to produce business records pursuant to the administrative subpoena issued by the Department of Labor. While it can be concluded that *Oklahoma Press* is a case challenging the application of the Fair Labor Standards Act to newspapers, the holding in that case specifically required compliance with the *subpoena duces tecum* issued by the Board. This holding indicates to the Magistrate Judge that an appropriate administrative official can compel the production of a newspaper's business records by subpoena without violating any precepts of the First Amendment.

## III. Analysis:

 The Magistrate Judge concludes that this Court has jurisdiction to consider the enforcement of the subpoena requested by the Board. The subpoena here at issue was properly issued by the Board and served upon the Respondent. The Magistrate Judge further concludes that the scope of review which the district court must undertake in review of the Application—while limited—is somewhat greater than that suggested by the Board. The Board here argues that the Court's review must be limited to determining whether a proceeding is pending before the Board and whether the evidence sought relates to or touches the matter under

investigation, and that there are no other legal defenses available to subpoena respondents (citing to *Cudahy Packing Co. v. NLRB,* 118 F.2d 295 (10th Cir.1941)). While there are several cases that do suggest that the district court's scope of review is quite limited, a close reading of the United States Supreme Court's decision in *Endicott* (Conclusion of Law No. 2) leads the Magistrate Judge to believe that the district court can determine if there is some other privilege which exists that would protect a respondent from disclosure of information.

■ Because this case is before the Court under its federal question jurisdiction, Fed.R.Evid. 501 applies to this proceeding. Pursuant to that rule, the privilege of a witness is governed by the principles of the common law as they are interpreted by courts of the United States and not by state privilege law. Therefore, the Indiana Shield Statute, I.C. 34–3–5–1, cannot be applied in this case, as the Respondent argues.[4] The Magistrate Judge's reading of the *Branzburg* case differs from that of Respondent. Therefore, the Magistrate Judge concludes that the United States Supreme Court in *Branzburg* specifically *declined* to establish a common law journalist's privilege (Conclusion of Law No. 7).

The Magistrate Judge can find no case law from the Seventh Circuit that establishes a journalist's privilege exists which would preclude Respondent from answering to this administrative subpoena.

Respondent cites to some cases from other circuits which discuss this issue. The Tenth Circuit, in *Silkwood v. Kerr–McGee Corp.,* 563 F.2d 433 (10th Cir.1977), stated that a "qualified privilege is developing in civil cases" (*id.* at 436), and read the *Branzburg* majority and concurring opinions as "recognizing [that] a privilege which protects information given to a reporter *is* important." The Court of Appeals in *Silkwood* returned that case to the district court with instructions to weigh certain factors in determining whether a documentary film maker was entitled to a protective order when he received a subpoena in a civil case to produce information he obtained .while working on his · film.

The Second Circuit apparently also recognizes a journalist's privilege in civil cases. *Baker v. F & F Investment,* 470 F.2d 778 (2nd Cir.1972), appears to be the source of this privilege, which has also been cited in cases such as *U.S. v. Burke,* 700 F.2d 70 (2nd Cir.1983).

■ The Magistrate Judge does not conclude that the privilege suggested in these other circuits has been recognized by the common law of this circuit, and concludes that the "qualified privilege" does not exist in this jurisdiction. However, even if the privilege exists, it., applies to "confidential sources" and "confidential information" which a journalist possesses. The information which the Board seeks to obtain by its subpoena. is not the kind of confidential source or information traditionally protected by such a qualified privilege. The information requested by the Board is the name and address of a party who placed a classified advertisement. The placing of a classified advertisement is a type of commercial activity. That commercial activity has little or nothing to do with the news gathering and editorial functions which the First Amendment is designed to protect. See, in that regard, *Herbert v. Lando,* 568 F.2d 974 (2nd Cir.1977). The placing of an advertisement generates revenue for the newspaper, and anticipates that information received in response to the advertisement will be conveyed back to the person who placed the advertisement and not kept confidential by the newspaper itself. While there is little case law defining what a "confidential source" is, the Magistrate Judge can find no case law that suggests that the name and address of every person who does business with the newspaper is "confidential source" information protected by any qualified privilege.[5]

---

4. It is not clear that this statutory privilege would apply to the information sought by the Board in its subpoena, but this issue does not need to be discussed here since state privilege law is irrelevant to the analysis.

5. Like any other business information, revenue sources and client lists can be confidential business information subject to some protections of Fed.R.Civ.P. 26 in discovery in civil suits. The Magistrate Judge cannot conclude that "confi-

The Magistrate Judge has reviewed other cases dealing with administrative orders directed towards the press to look at the scope of protection the First Amendment offers to the press. (*See* Conclusion of Law Nos. 8, 9.) The *Oklahoma Press Publishing Company* case in particular establishes that a newspaper may have to disclose business records pursuant to administrative subpoena. The Magistrate Judge concludes that the name and address of an advertiser is nothing more than a business record, which can be disclosed pursuant to a proper subpoena.

Having concluded that no federal common law journalist privilege exists in this circuit, and that even if one exists the information sought by the Board does not fall within the scope of confidential information protected by any such qualified privilege, there remains only to be determined whether this subpoena seeks relevant information, and can be directed to this entity which is not a party to the NLRB action. The names and addresses of the persons who placed these advertisements are information which is reasonably likely to lead to the discovery of evidence admissible before the Board. This complies with the definition of relevancy at Fed.R.Civ.P. 26(b) (Conclusion of Law No. 4). Under the *O.T. Link* case (Conclusion of Law No. 6), the Court may enforce the subpoena against a third party not accused of violating the Act.

## IV. Magistrate Judge's Recommendation:

The Magistrate Judge recommends that this Court issue an order directing the Respondent to comply with the subpoena and to produce the information sought by the Board within ten (10) days of the date of this Court's order.

**SO RECOMMENDED** this 2 day of August, 1996.

dential source" information protected under any journalist's qualified privilege is co-extensive with the definition of confidential business information under Fed.R.Civ.P. 26.