## WILSON HATTON *versus* SAMUEL ROBINSON.

Where an attorney at law was requested by a debtor to draw up a mortgage deed o‍
his personal property, and the debtor disclosed his purposes in making such a con-
veyance, either *without any particular motive, or in order to remove any scruple*
that the attorney might have entertained as to the character of the transaction, but no
legal advice as to the effect of such conveyance was asked or given, it was *held*,
that the testimony of the attorney as to such communications, was admissible.

The attorney, in such case, having drawn up the deed, by which the property was
conveyed to a third person to prevent it from being attached by creditors, the deed
was executed in the office of the attorney and in his presence; it was *held* that the
attorney was not exempted from testifying as to communications made to him by
such third person.

TRESPASS for taking two mares, a chaise and chaise har
ness. The defendant pleaded the general issue, and filed a
brief statement alleging that he attached them as the property of
David Winch.

At the trial, before *Wilde* J., it appeared, that the plaintiff
claimed the property under a bill of sale from Winch. The
defendant, to prove the bill of sale fraudulent, offered in evi-
dence the deposition of Samuel Ames Esq., a counsellor at
law in Providence. The plaintiff objected to the admission of
the deposition, on the ground that Mr. Ames was employed in
the transaction testified to by him, as the attorney of Winch
and the plaintiff, and that all he knew in relation to it, was
communicated to him in that capacity. The only evidence
that Mr. Ames was so employed, was the deposition in ques
tion.

Mr. Ames, in his deposition, testified that on April 6, 1831,
Winch desired him to draw a conveyance of certain property
attached to the Fenner tavern stand in Providence, to the
plaintiff, to whom he had contracted to sell it; that he accord-
ingly drew the conveyance; that his impression was, that a
small portion of the consideration was to be paid very soon,
but that the residue, amounting to the sum of $400 or $500,
was secured to Winch by the plaintiff's negotiable note in-
dorsed by one Wesson, which note also the deponent drew.
The deponent further testified, that on April 30, 1831, Winch
again called upon him, and informed him, that he was about
to leave Providence with the purpose of residing in the State

of New York ; that he owed old debts in Massachusetts to a much larger amount than the value of his property ; that he also owed a considerable sum in Providence, for which he was recently indebted ; that his intention was, to convert what salable property he had, particularly a pair of horses and a carriage or carriages, into money, as soon as he could obtain a fair price for them, and with the proceeds to pay his Providence creditors ; and that in the mean time his Massachusetts creditors pressed him, and as soon as he left Rhode Island for New York, would undoubtedly attach and sacrifice his horses and carriage or carriages.

The deponent further testified, that he understood Winch, that he had left them with the plaintiff for sale, with the intention from the proceeds of the sale, to give preference to, and pay his Providence creditors, and that he wished to cover them, as far as possible, from attachment by his Massachusetts creditors ; that, on the whole, as Winch had come from Massachusetts poor, and the credits he had obtained in Providence had been the means of his acquiring what little property he had, the deponent thought his preference of his Providence creditors would not be unfair, and accordingly informed him, that he was willing to draw a mortgage deed from him of the horses, carriage or carriages, to any person he might select ; that Winch said, that he had perfect confidence in the plaintiff, and that the deponent accordingly drew such a mortgage deed, the consideration of which he thought was between $ 200 and $ 300 ; that there was some delay about the execution of the mortgage, which was to take place in the deponent's office ; that the deponent stepped across the street two or three times to the place where the plaintiff was, to hasten his coming for that purpose ; that, at these times, the deponent treated the mortgage as wholly fictitious, and spoke of it to the plaintiff as such, and that the deponent understood him, from his words or manner in speaking of the mortgage, or both, to assent, that it was a mere cover ; that at last the plaintiff came to the deponent's office, and brought with him a bundle of bank bills, as the consideration of the mortgage ; that the mortgage was executed and delivered in the deponent's presence, but the deponent thought that he did not sign it as a witness ; that the plain-

tiff handed him the bank bills and requested him to count them, that the deponent hesitated at first, but at the reiterated request of the plaintiff took the bills and turned them over for a moment, but was so convinced that the whole affair was illusory, that he did not compute their amount, and handed them back, saying that he supposed or believed the amount was right; and that the deponent was paid for drawing the mortgage, at the time of the execution, by Winch.

The objection to the admission of this deposition was overruled, and the plaintiff thereupon became nonsuit.

If this ruling was wrong, the nonsuit was to be taken off, and a new trial granted; otherwise, judgment was to be rendered on the nonsuit.

The cause was argued in writing.

*Merrick* and *Bottom* for the plaintiff. That the employment of one in practice as an attorney, for the purpose of drafting a deed or other legal instrument, secures the client against the disclosure of all communications made to the attorney in relation thereto, is clearly determined in England. *Cromack* v. *Heathcote*, 2 Brod. & Bingh. 4; *Gainsford* v. *Grammar*, 2 Campb. 9; *Rex* v. *Withers*, 2 Campb. 579; *Wilson* v. *Rastall*, 4 T. R. 753. Counsel are not only protected for not answering, but they are compelled to be silent, it being a privilege not of the counsel, but of the client. 2 Stark. on Evid. 395; 1 Stark. on Evid. 104. The same rules and principles have been adopted in this country as in England. *Anon.* 8 Mass. R. 370; *Baker* v. *Arnold*, 1 Caines's R. 258. Within these rules the communications from Winch to Mr. Ames very clearly fall. He anticipated an attachment of his property by his Massachusetts creditors; and the precise object which he had in view, was the mode in which he might, with the greatest facility, avoid such legal claims. He was endeavouring to prepare himself for suits which he anticipated were about to be commenced.

Where counsel are consulted as to what will be the legal effect and consequences of any particular instrument of conveyance, they are as much guarding the rights of their clients and protecting their property, as when litigation is actually in progress; and communications made by clients, in both cases, are

entitled to the same privileges.  The current of the decisions, and all the elementary treatises, put the rule strictly on the ground of *professional consultation.*  They do not limit it to consultations on questions in actual or immediately contemplated litigation.  It is the *character* of the communication, which is to be considered.  If the attorney is not applied to in his official character, the law implies no confidence, and the attorney then stands like all other men ; but if advice is solicited, then the rule applies.  Lord *Tenterden,* in *Bramwell* v. *Lucas,* 2 Barn. & Cressw. 743, cited by the defendant, says that "a question for legal advice may come within the description of a confidential communication, because it is part of the duty of an attorney, in that capacity, to give advice."  This is the very rule of which the plaintiff desires to avail himself.  Winch wished e prefer his Providence creditors to his Massachusetts creditors ; he consulted his counsel on the sufficiency of a particular step to accomplish that object ; and certain measures are adopted, as the result of the consultation, to produce the intended effect.

The plaintiff, in taking the conveyance from Winch, was as much the client of Mr. Ames, as Winch himself.  The parties who meet, the one to give, and the other to accept a conveyance, have an equal, though it may be a different interest, in the transaction.  The attorney who advises, does so, not less for the one than for the other.

*Newton, Lincoln* and *Child* for the defendant.  The true rule seems to be, that whatever is disclosed to the attorney for the purpose of obtaining his advice, with reference to a cause of action, either in contemplation of its being enforced, or where legal proceedings are actually instituted, is privileged ; because without this privilege, the administration of justice must be impeded.  But this reason is not applicable to instruments of conveyance.  Public policy requires, that the facts attending the execution of such instruments should be publicly known, for the prevention of frauds.  1 Stark. on Evid. 104 ; *Wadsworth* v. *Hamshaw,* 2 Brod. & Bingh. 5, note ; *Williams* v. *Mundie,* Ryan & Moody, 34 ; *S. C.* 1 Carr. & Payne, 158 ; *Broad* v. *Pitt,* 3 Carr. & Payne, 518 ; *Cobden* v. *Kendrick,* 4 T. R. 431 ; *Duffin* v. *Smith,* Peake's R. 108 ·

*South Sea Co.* v. *Dolliffe*, cited in 2 Atk. 525 : *Brandt* v *Klein*, 17 Johns. R. 335 ; *Bramwell* v. *Lucas*, 2 Barn. & Cressw. 745.

It is a forced construction of this deposition to infer from it, that any application was made by Winch for legal advice in the defence of any suit. None was then pending, and it was only among the events which were possible, that any suits would be instituted. Winch certainly could not have asked legal advice, whether his creditors could commence suits. It was not his purpose to defend, if they were commenced. The conveyance of property would not affect, in any manner, the right of any creditor to recover judgment for his debt, although it might defeat the collection of it. It does not appear, that Winch asked legal advice of Mr. Ames, on any subject, or that the latter gave any legal advice ; and the burden of proof is on the plaintiff, to show that Mr. Ames acted in a professional capacity. The business could have been done as well by any other person as by an attorney at law.

But whatever objections may exist as to the disclosure of Winch's communications, the same principles will not apply to those of the plaintiff. Mr. Ames was not his attorney, if he acted in that capacity at all. The plaintiff had no suits to be defended, no attachments to be defeated ; he asked no legal advice, and paid no compensation. Nor was Mr. Ames the attorney of both parties ; for there was in reality but one party to the transaction ; and it was not intended that the plaintiff should have the slightest beneficial interest in it.

The objection of the plaintiff went to the whole deposition. If some parts are admissible, the exception should have been taken to those portions which are inadmissible, in order that they might be struck out.

SHAW C. J. delivered the opinion of the Court. The only question for the Court in the present case, is, whether the deposition of Mr. Ames was properly admitted in evidence ; and this depends upon the further question, whether the matters testified to by him, were to be considered as within the rule of privileged communications. Another question was indeed made, namely, whether the deposition should have been wholly rejected ; or if a part were objectionable, as being

privileged, the objection should not have been confined to such part. But as by far the greatest part of the deposition, both in bulk and importance, was alike open to the objection, and the part that would remain, would be almost, if not wholly immaterial, the objection at the trial seems to have been made to the deposition, without exception to that course, when it should have been made to the disclosure of the supposed privileged communication. But the cause has been argued upon the same grounds as if the objection had been thus taken, and we shall so consider it.

The rule, upon which the plaintiff's counsel in the present case relied, to exclude all that part of the testimony of Mr. Ames, which consisted of statements made to him by Winch, as to his views and motives in making the sale, upon which the plaintiff founds his title, is that well known rule of evidence, founded on the confidence which a client reposes in his counsel, attorney or solicitor. By this rule, it is well established, that all confidential communications between attorney and client, are not to be revealed at any period of time, nor in any action or proceeding between other persons ; nor after the relation of attorney and client has ceased. This privilege is that of the client and not of the attorney, and never ceases, unless voluntarily waived by the client.

We had occasion lately to consider this subject in the case of *Foster* v. *Hall*, 12 Pick. 89, which was not published at the time this cause came before the Court, in which it was decided, that the privilege was not confined to the case of communications made to an attorney, with a view to the prosecution or defence of a suit or legal process, pending or immediately contemplated, at the time of the communication ; but that it extends to all communications made to an attorney or counsellor, duly qualified and authorized as such, and applied to by the party in that capacity, with a view to obtain his advice and opinion in matters of law, in relation to his legal rights, duties and obligations, whether with a view to the prosecution or defence of a suit, or other lawful object.* This extent and modification of the rule, we thought, was well sup-

---

* In reference to this subject see *Greenough* v. *Gaskell*, 1 Mylne & Keene, 98

ported by the weight of authority, and consistent with the principle upon which the rule is founded. This principle we take to be this ; that so numerous and complex are the laws by which the rights and duties of citizens are governed, so important is it that they should be permitted to avail themselves of the superior skill and learning of those who are sanctioned by the law as its ministers and expounders, both in ascertaining their rights in the country, and maintaining them most safely in courts, without publishing those facts, which they have a right to keep secret, but which must be disclosed to a legal adviser and advocate, to enable him successfully to perform the duties of his office, that the law has considered it the wisest policy to encourage and sanction this confidence, by requiring that on such facts the mouth of the attorney shall be for ever sealed. To the rule as thus stated we are still inclined to adhere.

But the privilege of exemption from testifying to facts ac tually known to the witness, is in contravention to the general rules of law ; it is therefore to be watched with some strictness, and is not to be extended beyond the limits of that principle of policy, upon which it is allowed. It is extended to no other person than an advocate or legal adviser, and those persons whose intervention is strictly necessary to enable the client and attorney to communicate with each other, as an interpreter, agent or attorney's clerk. And this privilege is confined to counsel, solicitors and attorneys, when applied to as such, and when acting in that capacity. *Wilson* v. *Rastall*, 4 T. R. 753.

But there are many cases, in which an attorney is employed in transacting business, not properly professional, and where the same might have been transacted by another agent. In such case the fact that the agent sustains the character of an attorney, does not render the communications attending it, privileged ; and they may be testified to by him, as by any other agent. In *Wilson* v. *Rastall* already cited, *Buller* J. says, that the privilege is confined to the case of counsel, solicitor and attorney, and it must be proved, that the information was communicated to the witness, in one of those characters ; for if he be employed merely as steward, he may be examined

So where the matter is communicated by the client to his attorney for purposes in no way connected with the object of the retainer and employment of the attorney as such. *Cobden* v *Kendrick*, 4 T. R. 432. The Court say, the difference is, whether the communications were made by the client to the attorney in confidence, as instructions for conducting his cause, or a mere *gratis dictum*.

And so strictly is the rule held, that the privilege extends only to communications made by the client to his attorney for the purpose of obtaining legal advice, that in a late case it was held, that a communication made by a client to his attorney, not for the purpose of asking his legal advice, but to obtain information as to a matter of fact, is not privileged, and may be disclosed by the attorney, if called as a witness in a cause. *Bramwell* v. *Lucas*, 2 Barn. & Cressw. 745.

Looking at the deposition of Mr. Ames, with these views in respect to the legal privilege of communications between attorney and client, it appears quite manifest, that the rule of exemption does not apply to any communication made by Hatton the plaintiff, inasmuch as it does not appear that the witness was applied to by him, or that the relation of attorney and client, in any respect, subsisted between them. In regard to those communications, therefore, it appears to the Court, that the witness cannot be exempted from testifying.

But upon examining the other part of Mr. Ames's deposition, we cannot perceive that the communications were made to him by Winch with the purpose of instructing him in any cause, or engaging him in the conduct of any professional business, or of obtaining any legal advice or opinion. If the disclosure of his views and purposes, in the conveyance of property proposed to be drawn, was not, as stated in some of the books, a mere *gratis dictum*, the only purpose seems to have been to satisfy Mr. Ames's mind, and remove any scruple that he might entertain, as to the character of the transaction, and to convince him, that whatever might be the legal character of the act, it was not attended with moral turpitude. It did satisfy him, that he was not to be engaged in a conspiracy to cheat, and induced him to consent to draw the deed. Here was no legal advice asked, no opinion requested as to the effe

Hatton
v.
Robinson.

and operation of such a conveyance in point of law, and none given. We are therefore necessarily brought to the conclusion, that either these disclosures were made without any particular motive, or if there was a purpose, connected with the proposed draft, it was to satisfy Mr. Ames's mind, upon a point of fact, not for the information of his own in point of law, and in either event they are not to be deemed privileged communications, which the witness was prohibited from disclosing. The whole deposition therefore was rightly admitted, and conformably to the case agreed, the nonsuit must stand.