**NATIONAL LABOR RELATIONS BOARD, Appellant,**

v.

**E. Bruce HARVEY, Appellee.**
**No. 9718.**

United States Court of Appeals
Fourth Circuit.

Argued March 3, 1965.

Decided July 7, 1965.

Rehearing Denied Sept. 23, 1965.

Before SOBELOFF and BRYAN, Circuit Judges, and BUTZNER, District Judge.

BUTZNER, District Judge:

The National Labor Relations Board has appealed from a judgment of the District Court which denied the Board's application for an order requiring E. Bruce Harvey to obey a subpoena duces tecum issued by the Board.[1] The Court quashed the subpoena and discharged a rule to show cause which had been issued against Harvey.

The subpoena was issued as an incident to the Board's investigation of charges that the American Furniture Company placed E. O. Shrader, a representative of District 50, United Mine Workers, under surveillance by detectives during an organizing campaign. The company discharged two employees shortly after Shrader visited their homes.

O. T. Link, the head of the detective agency, upon advice of counsel, declined to identify the person who had employed him. The District Court held him in contempt. Its judgment was affirmed. Link v. N. L. R. B., 330 F.2d 437 (4th Cir. 1964). Link then disclosed that he had been employed by Harvey. He furnished the Board a copy of his report to Harvey which included information about Shrader's visits to the homes of the two employees who were later discharged.

Harvey has engaged in the general practice of law in Altavista, Virginia since 1950. He is qualified to practice in the courts of Virginia and in the Supreme Court of the United States. He is a member in good standing of bar associations in Virginia and the American Bar Association. His partner, W. Barney Arthur, has been a licensed attorney for more than thirty years and is chair-

George B. Driesen, Atty., N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Solomon I. Hirsh, Atty., N.L.R.B., on brief), for appellant.

S. Bolling Hobbs, Lynchburg, Va. (Caskie, Frost, Davidson & Hobbs, Lynchburg, Va., on brief), for appellee.

---

1. The subpoena was issued pursuant to § 11(1) of the National Labor Relations Act, 29 U.S.C. § 161(1), 1958. The subpoena required Harvey to produce "all reports, copies of reports, correspondence, copies of correspondence, and other documents and records in your custody in connection with or pertaining to the employment of O. T. Link to engage in surveillance of Everett O. Shrader of Rocky Mt., Va., and in connection with or pertaining to the surveillance of Everett O. Shrader of Rocky Mt., Va."

man of the Sixth Judicial Committee of the Virginia State Bar. Harvey declined to comply with the subpoena or to name his client unless the Court required him to do so. He testified that at the request of a client he employed Link to conduct the surveillance. He asserts that the attorney-client privilege justifies his refusal to name the client and comply with the subpoena. In support of his position he submitted an affidavit which states in part:

"* * * in late February or early March, 1963, a long time, regular and continuing client of the firm of Arthur & Harvey, and for which client said firm has performed and furnished legal services of a varied nature, both before and since, did, in conference and in confidence and not in the presence of others, and with the distinct understanding that client's name would not be revealed in connection therewith, seek and engage the aid, counsel, advice, assistance and services of said firm in the securing of certain information of importance to said client in the lawful conduct of said client's affairs; that in the securing of such information and in the carrying out of the services and assistance for which said firm was employed, I did during the last part of February or the first part of March, 1963, and without revealing the name or purposes of the client, engage the services of one O. T. Link, of Danville, Virginia, a private detective or investigator doing business under the name of Danville Detective Agency, to make an investigation concerning the activities of one E. O. Shrader then living or staying at Rocky Mount, Virginia; that Mr. Link's investigation covered a period of one week, from March 4, 1963, to March 11, 1963; that Mr. Link's written report of his investigation was delivered to me and a copy thereof delivered to the client hereinbefore referred to; that I am advised that a copy of Mr. Link's report was de-

livered on or about May 25, 1964, to Mr. David C. Sacks, Regional Attorney for the applicant, National Labor Relations Board, by Mr. C. Stewart Wheatley, counsel for Mr. Link in the proceeding then pending in this Court under the style of National Labor Relations Board v. O. T. Link, Civil Action 597(D); that the client of Arthur & Harvey referred to herein is not the American Furniture Company of Martinsville, Virginia, or any person, firm or individual employed or in any way connected with said company; that no information contained in the said report obtained from Mr. Link as aforesaid has been revealed by me or through the firm of Arthur & Harvey to said American Furniture Company or to any officer, agent or employee thereof or to anyone other than the aforesaid client nor has any other communication or information of any kind concerning the matter for which our services and assistances were engaged by our client been so revealed; that the client hereinbefore referred to advises and I have every reason to believe that said client has no connection of any kind, has not acted as agent for and has not revealed any information contained in Mr. Link's report to the American Furniture Company or any officer, agent or employee thereof, and that such information has not been passed on, by or through said client to said American Furniture Company or any officer, agent or employee thereof; that the foregoing appear to be borne out by the statement of Mr. Richard M. Simmons, Jr., President of American Furniture Company reported in March 26, 1964, issue of the Roanoke Times, a copy of which is attached hereto:

"I further depose and say that the purposes for which the services of the firm of Arthur & Harvey were engaged by our aforesaid client and the resulting investigation of Mr.

Shrader by Mr. Link under my direction were not for the purpose of interfering, restraining or coercing any employee of the American Furniture Company or any other employees in the exercise of the rights guaranteed in Section 7 of the National Labor Relations Act or in violation of Section 8(a) (1) of said Act; that such purposes and the investigation of Mr. Shrader were not in connection with any criminal or fraudulent matter, nor in my considered opinion were they unlawful or in violation of any provisions of the National Labor Relations Act or any other law or statute; that all communications between the aforesaid client of the firm of Arthur & Harvey of which I am a partner in connection with the aforesaid matter, including specifically the name of the client, have been considered both by the client and his attorneys to be in strictest confidence and to constitute privileged communication within the recognized principles of attorney-client privilege and protected against disclosure to other persons without the consent of the client; that the client involved has specifically declined to give consent to any disclosure of his name or any such communication; that under the circumstances I sincerely feel and believe that it would be a breach of Canon 37 of the Canons of Professional Ethics of the American Bar Association of which I am a member and of the recognized legal ethics observed by reputable attorneys in Virginia to reveal the information sought by the applicant; and further that in my considered judgment such information, if revealed, would be of no aid or assistance to the applicant for the purposes of its investigation and charg-

es against the American Furniture Company."

The Board asserts that the key to its investigation of the charges is the identity of the person who employed Harvey to arrange the surveillance. It points out that the employees were discharged shortly after the detective reported to Harvey that the union representative had visited their homes. The Board contends that if the company arranged for the surveillance, it may have violated the Act, and a complaint should issue to prevent further interference with rights guaranteed by the Act.[2] On the other hand, the Board concedes that if the company is not responsible for the employment of the detective the charge relating to the surveillance can be dismissed. The Board does not challenge the veracity of Harvey. It has, however, moved to strike those portions of his affidavit that are based upon hearsay or express an opinion.

The District Court found upon amply supporting evidence that Harvey had acted on behalf of a longtime, regular, continuing client; his client was not the American Furniture Company; his firm had performed varied legal service for the client before and since the surveillance; no information about the surveillance was passed to American Furniture Company by Harvey; and he had every reason to believe that his client did not reveal information to American Furniture Company. Of course, it was impossible for Harvey to say, and consequently for the Court to find, whether unknown to Harvey his client informed the American Furniture Company about the surveillance. The District Judge properly held that the identity of Harvey's client is relevant to the proceeding before the Board and must be disclosed by Harvey unless disclosure is protected by the attorney-client privilege.

Wigmore, recognizing that a definition of the attorney-client privilege is a mat-

2. Cf. N. L. R. B. v. Collins & Aikman Corp., 146 F.2d 454, 455 (4th Cir. 1944), where this Court said: " * * * Any real surveillance by the employer over the Union activities of employees, whether frankly open or carefully concealed, falls under the prohibitions of the Act. * * * "

ter of some difficulty, has stated the essentials to be:

"(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961)

An oft-quoted definition of the privilege is found in United States v. United Shoe Machinery Corporation, 89 F.Supp. 357, 358 (D.Mass.1950):

" * * * The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

The Board urges that the privilege is not applicable because there has been a prima facie showing that the communication falls within the "crime or tort" exception. We believe, however, that it is unnecessary to decide the case on this basis. The Board has cited no cases construing an unfair labor practice as defined in § 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 158 (a) (1) to be a crime or a tort. Congress did not provide any penal provisions in the Act. To deny the privilege on the ground that an unfair labor practice is a crime or a tort would have wide ramifications in the field of labor management relations. We therefore do not reach the question of whether there has been a prima facie showing of an unfair labor practice. The case turns, not on the nature of the surveillance or the proceedings in which it has become an issue, but rather upon the application of well established principles defining the attorney-client privilege.

■ Generally, the identity of the attorney's client is not considered privileged matter. In Behrens v. Hironimus, 170 F.2d 627, 628 (4th Cir. 1948), Judge Dobie quoted with approval the rule stated in 70 Corpus Juris, Witnesses, § 502:

" 'The existence of the relation of attorney and client is not a privileged communication. The privilege pertains to the subject matter, and not to the fact of the employment as attorney, and since it presupposes the relationship of attorney and client, it does not attach to the creation of that relationship. So, ordinarily, the identity of the attorney's client, or the name of the real party in interest, and the terms of the employment will not be considered as privileged matter. The client or the attorney may be permitted or compelled to testify as to the fact of his employment as attorney, or as to the fact of his having advised his client as to a certain matter, or performed certain services for the client * * *.' "

■ Judge Clark stated the rule in United States v. Pape, 144 F.2d 778, 782 (2nd Cir. 1944), cert. denied 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602 (1944):

"The authorities are substantially uniform against any privilege as applied to the fact of retainer or identity of the client. The privilege is limited to confidential communications, and a retainer is not a confidential communication, although it cannot come into existence without some communication between the at-

torney and the—at that stage prospective—client. * * *"

A number of other cases have applied this general principle under varying circumstances. e. g. Tomlinson v. United States, 68 U.S.App.D.C. 106, 93 F.2d 652, 655, 114 A.L.R. 1315 (D.C.Cir. 1937), cert. denied sub nom. Pratt v. United States, 303 U.S. 642, 58 S.Ct. 645, 82 L.Ed. 1107 (1937); Colton v. United States, 306 F.2d 633, 637 (2nd Cir. 1962); Goddard v. United States, 131 F.2d 220, 221 (5th Cir. 1942, dictum); Gretsky v. Miller, 160 F.Supp. 914, 915 (D.Mass.1958); United States v. Lee, 107 F. 702 (E.D.N.Y.1901); People ex rel. Voegelstein v. Warden, 150 Misc. 714, 270 N.Y.S. 362 (Sup.Ct.1934), aff'd. memo. 242 App.Div. 611, 271 N.Y.S. 1059 (1934); 8 Wigmore, Evidence § 2313 (McNaughton rev. 1961).

■ To the general rule is an exception, firmly bedded as the rule itself. The privilege may be recognized when so much of the actual communication has already been disclosed that identification of the client amounts to disclosure of a confidential communication. Application of this rule may be found in Chirac v. Reinicker, 24 U.S. (11 Wheat.) 280, 6 L.Ed. 474 (1826); Baird v. Koerner, 279 F.2d 623, 95 A.L.R.2d 303 (9th Cir. 960); Elliott v. United States, 23 App. D.C. 456 (1904); In re Kaplan, 8 N.Y.2d 214, 203 N.Y.S.2d 836, 168 N.E.2d 660 (1960); cf. United States v. Pape, 144 F.2d 778, 783 (2nd Cir. 1944) (dissent).

It appears that the exception to the rule is applicable in this case. Here, upon identification of the client, it will be known that the client wanted information about Shrader. More than the identity of the client will be disclosed by naming the client. It therefore becomes necessary to consider whether the communication relating to Shrader is privileged.

■ Not all communications to a lawyer are privileged. The authorities establish that the privilege is allowed only with respect to the client's communication made " * * * for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, * *." United States v. United Shoe Machinery Corporation, 89 F.Supp. 357, 358 (D. Mass.1950). In Olender v. United States, 210 F.2d 795, 806 (9th Cir. 1954) the Court observed:

" * * *. The attorney-client privilege is limited to communications made in the course of seeking *legal advice* from a professional legal adviser *in his capacity as such.* * * *"

Wigmore, in stating the essentials of the privilege, limits it to a communication "Where legal advice of any kind is sought * * *." 8 Wigmore, Evidence, 2292 (McNaughton rev. 1961).[3]

One of the most illuminating discussions of the problem is found in Hatton v. Robinson, 31 Mass. (14 Pick.) 416, 422 (1833). There Chief Justice Shaw said:

" * * *. This principle we take to be this; that so numerous and

---

3. A number of cases have denied the privilege because the lawyer was engaged in non-legal services. See, e.g. Grant v. United States, 227 U.S. 74, 79, 33 S.Ct. 190, 57 L.Ed. 423 (1913) (dictum); Lowy v. Commissioner of Internal Revenue, 262 F.2d 809 (2nd Cir. 1959); Pollock v. United States, 202 F.2d 281 (5th Cir. 1953). The mere fact that a person who is not an attorney could have performed the same service is not a ground for requiring a lawyer to disclose communications with his client in discovery proceedings. Ellis-Foster Co. v. Union Carbide & Carbon Corp., 159 F.Supp. 917, 920 (D.N.J.1958). Of interest because it involves investigators is O'Neill v. United States, 79 F.Supp. 827, 829 (E.D.Pa.1948). There the Court required agents of the Federal Bureau of Investigation, who were also lawyers, to disclose information on discovery. The Court said:

" * * * It is not pretended that the agents who collected this information either advise the government in a professional capacity or have anything to do with conducting the litigation, * * *."

complex are the laws by which the rights and duties of citizens are governed, so important is it that they should be permitted to avail themselves of the superior skill and learning of those who are sanctioned by the law as its ministers and expounders, both in ascertaining their rights in the country, and maintaining them most safely in courts, without publishing those facts, which they have a right to keep secret, but which must be disclosed to a legal adviser and advocate, to enable him successfully to perform the duties of his office, that the law has considered it the wisest policy to encourage and sanction this confidence, by requiring that on such facts the mouth of the attorney shall be forever sealed. To the rule as thus stated we are still inclined to adhere.

"But the privilege of exemption from testifying to facts actually known to the witness, is in contravention to the general rule of law; it is therefore to be watched with some strictness, and is not to be extended beyond the limits of that principle of policy, upon which it is allowed. * * *.

"But there are many cases, in which an attorney is employed in transacting business, not properly professional, and where the same might have been transacted by another agent. In such case the fact that the agent sustains the character of an attorney, does not render the communications attending it, privileged; and they may be testified to by him, as by any other agent. In Wilson v. Rastall, * * * (4 T.R. 753), Buller J. says, that the privilege is confined to the case of counsel, solicitor and attorney, and it must be proved, that the information was communicated to the witness, in one of those characters; for if he be employed merely as steward, he may be examined.

" * * *.

"And so strictly is the rule held, that the privilege extends only to communications made by the client to his attorney for the purpose of obtaining legal advice, that in a late case it was held, that a communication made by a client to his attorney, not for the purpose of asking his legal advice, but to obtain information as to a matter of fact, is not privileged, and may be disclosed by the attorney, if called as a witness in a cause. Bramwell v. Lucas, 2 Barn. & Cressw. 745."

█ Harvey suggests that he was following the requirements of Canon No. 37 [4] of the Canons of Professional Ethics of the American Bar Association, which admonishes lawyers to preserve their client's confidences. Observance of the canon is commendable. The canon, however, does not purport to state the law governing the attorney-client privilege.

██ At the least, surveillance is an intrusion upon the privacy of the person upon whom the detective is spying. This Court has held that a detective must name his employer. Link v. N. L. R. B., 330 F.2d 437 (4th Cir. 1964). We recognize, nevertheless, that circumstances may exist where a lawyer finds it neces-

---

4. The canon has been adopted by the Supreme Court of Appeals of Virginia in its Rules for the Integration of the Virginia State Bar, 171 Va. xxxiii (1938). The same rules contain a definition of the practice of law which is similar in many respects to other authorities which distinguish legal from non-legal services. The definition provides, in part:

"Generally, the relation of attorney and client exists, and one is deemed to be practicing law, whenever he furnishes to another advice or service under circumstances which imply his possession and use of legal knowledge or skill.

"Specifically, the relation of attorney and client exists, and one is deemed to be practicing law, whenever—

"(1) One undertakes * * * to advise another * * * in any matter involving the application of legal principles to facts or purposes or desires.

" * * * *" 171 Va. xvii (1938)

sary to employ a detective to enable him adequately to furnish legal services to his client. In such a situation the client's communication, including those relating to the hiring of the detective, would be privileged because the legal services are indistinguishable from the the non-legal. In the absence of mingled legal and non-legal services, no sound reason exists for courts to clothe in secrecy the identity of the person ordering the surveillance simply because a lawyer acted as his intermediary. Such an extension of the attorney-client privilege is not supported by any authority and is contrary to the policy undergirding the privilege. Wigmore teaches:

> "* * * the privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete. * * *. It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961).

■ The record, including Harvey's affidavit, does not show unequivocally the character of Harvey's retainer. The privilege, however, is the client's and we believe the omission in the record should not prejudice him.

The case will be remanded to enable the District Judge to conduct further proceedings to determine whether Harvey must comply with the subpoena. The issue should not be submitted on affidavits. A full evidentiary hearing should be held. The responsibility of determining whether the privilege exists rests upon the District Judge and not upon the lawyer whose client claims the privilege. The District Judge should ascertain the nature of the consultation in which Harvey engaged. We recognize that this may be a delicate search but the same concern arises in many situations. Counsel for the Board should have an opportunity to question Harvey in detail about the character of his employment. We suggest, without attempting to exhaust the possibilities of inquiry, that the District Judge should be fully advised whether Harvey's employment concerned a criminal or civil matter; whether it touched upon tort or contract and what legal services, if any, Harvey was retained to provide.

If the District Judge finds from the nature and character of Harvey's employment that Harvey was retained by his client to render a legal opinion, perform a legal service or afford representation in legal proceedings and as an incident to this employment he hired the detective, the privilege should be recognized. On the contrary, if Harvey was engaged to obtain information for his client without being retained to furnish a legal opinion, services or representation, in connection with the request for information, the privilege does not exist and he must disclose the name of his client and comply with the subpoena.

The judgment is vacated and this case is remanded for further proceedings consistent with this opinion.

Vacated and remanded.