**In re GRAND JURY INVESTIGATION.**

**Misc. No. 86–3035.**

United States District Court,
S.D. West Virginia,
Huntington Division.

July 30, 1986.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

In this miscellaneous action the Government brings on a motion seeking to compel an attorney, John Doe,* to testify before a grand jury. The attorney opposes the motion. By previous order the Court gave notice to all interested parties. Thereafter, the Court conducted an in camera hearing on the motion with all interested parties separately participating. The Court now announces its decision.

### I. *Background*

The instant motion is ancillary to a major drug investigation in southern West Virgin-

---

* For obvious reasons, the Court will not use the real names of the parties.

ia. Sixteen individuals are presently under indictment. Count Two of the indictment charges certain of the Defendants with engaging in a criminal conspiracy. The indictment further charges in Count Two that a part of the conspiracy was "conduct designed to conceal the scope and existence of the conspiracy to law enforcement agencies ... by providing attorneys and bail funds for members of the organization arrested for violations of the drug laws...."

The Government believes that the retention of John Doe's services on October 20, 1985, concerning state drug charges against A.D. was in furtherance of that conspiracy. It, therefore, seeks to inquire of John Doe as to the identity of the person who arranged his representation of A.D. on that date.

The Government has indicated in filings with the Court that it is informed that John Doe went to the jail on October 20, 1985, in an attempt to get A.D. out on bond. He was unable to do so on that date, but returned the following day and obtained A.D.'s release. Doe asserts that he performed no further services for A.D.

Attorney Doe objects to the inquiry slated to be made before the grand jury on the basis of the attorney-client privilege. In the in camera hearing before the Court, Doe acknowledged that he had an ongoing attorney-client relationship with the unnamed client during the time of his representation of A.D. He asserts that he represented the unnamed client in a state court trial in September of 1985, which resulted in a hung jury. The trial was rescheduled for January of 1986, and Doe continued to represent the unnamed client in the interim. He noted that his client still owed him money from the September trial and that she told him to add the amount due for the services rendered to A.D. to her account. He, therefore, considers her communications to him in reference to the representation of A.D. to be protected by the attorney-client privilege.

The unnamed client, B.P., appeared before the Court at the in camera hearing and personally asserted the privilege. The oth-er relevant party, A.D., stated that he had "no objection" to Doe appearing before the grand jury.

## II. *Discussion*

Generally speaking, the identity of an attorney's client is not considered to be a privileged matter. The reasoning for the rule of nonprivilege was explained in *Behrens v. Hironimus*, 170 F.2d 627 (4th Cir. 1948):

"The existence of the relation of attorney and client is not a privileged communication. The privilege pertains to the subject matter, and not to the fact of the employment as attorney, and since it presupposes the relationship of attorney and client, it does not attach to the creation of that relationship. So, ordinarily, the identity of the attorney's client, or the name of the real party in interest, or the terms of the employment will not be considered as privileged matter. The client or the attorney may be permitted or compelled to testify as to the fact of his employment as attorney, or as to the fact of his having advised his client as to a certain matter, or performed certain services for the client."

*Id.* at 628 (*quoting* 70 Corpus Juris, *Witnesses*, § 502).

The Fourth Circuit, in *N.L.R.B. v. Harvey*, 349 F.2d 900 (4th Cir.1965), noted an exception to the above rule: "The privilege may be recognized when so much of the actual communication has already been disclosed that identification of the client amounts to disclosure of a confidential communication." *Id.* at 905. Likewise, the Fifth Circuit has recognized an exception to client identification when such identification "may well be the link that could form the chain of testimony necessary to convict an individual of a federal crime." *In Re Grand Jury Proceedings (Jones)*, 517 F.2d 666, 672 (5th Cir.1975) (*quoting Baird v. Koerner*, 279 F.2d 623, 633 (9th Cir.1960)). The interested parties here, Doe and his client, argue that identification of the client may provide the last link necessary to implicate her in criminal wrongdoing. In making this argument, the parties point to

not one but two criminal acts. First, the identification would provide information relative to the conspiracy charge. Second, the identification may also implicate the client in perjury. The client testified at a detention hearing that she had not retained Doe to represent A.D. on the occasion in question. Hence, the identification of his client would place Doe in the position of directly contradicting his client's testimony.

The Government counters this argument by contending that another rule of law in the area of attorney-client privilege controls the situation. That rule is the crime/fraud exception to the attorney-client privilege. An instructive case comes out of the Fifth Circuit, the same circuit which provided support for Doe's "last link" argument. *See In Re Grand Jury Proceedings (Jones), supra.* In *In Re Grand Jury Proceedings (Pavlick),* 680 F.2d 1026 (5th Cir.1982), the court was faced with a situation somewhat similar to that here. Three individuals were apprehended on a boat in the Gulf Coast which contained a sizable amount of marijuana. They were tried and convicted in a federal district court. After their conviction, the Government sought to discover the identity of the person who had provided the funds used to post bond and compensate their attorney. The three convicted smugglers did not know the identity of that person, but one testified that when he was recruited for the drug smuggling operation he was promised that he would be "taken care of" if arrested. Thereupon, the defense attorney was called before the grand jury. He refused to identify the client which had paid for the services rendered to the three drug smugglers. He argued that to do so might incriminate that client.

The Fifth Circuit noted that in its earlier opinion, *Jones, supra,* it had recognized the validity of the attorney's argument. Nevertheless, the Court stressed the "peculiar facts" of that case and pointed out a "critical distinction" between *Jones* and *Pavlick.* The distinction between the two cases was that in *Pavlick* there was evidence of an arrangement to provide legal services to the participants in a drug smuggling operation. This agreement to provide legal services removed the identity of the client from the protection of any privilege. The court thus concluded that "where the government makes a prima facie showing that an agreement to furnish legal assistance was part of a conspiracy, the crime or fraud exception applies to deny a privilege to the identity of him who foots the bill— and this even though he be a client of the attorney and the attorney unaware of the improper arrangement." 680 F.2d at 1029.

The Fifth Circuit cited with approval the Ninth Circuit's decision in *United States v. Hodge and Zweig,* 548 F.2d 1347 (9th Cir. 1977). That case also has facts close to those here. In an indictment, the Government had alleged "that as part of [a] conspiracy, the conspirators had agreed to provide bail and legal services for participants who were apprehended by law enforcement officials in the course of the criminal activities." *Id.* at 1350. In an unrelated investigation, the Internal Revenue Service sought from attorneys involved in the criminal case the substance of the fee arrangements which they had with their clients. The attorneys opposed the request on the grounds that such disclosure might expose their clients to criminal liability. After thoughtful analysis, the court found that the attorneys had met the requirements of the exception to the general rule that client identity or fee arrangements are not privileged. Nevertheless, the Court found there to be more to its inquiry. It referred to the *prima facie* showing by the Government that the attorneys were retained, without their knowledge, in order to promote intended or continuing criminal activity. Refusing to allow the attorney-client privilege "to be used as a cloak for illegal or fraudulent behavior," *Id.* at 1354, the court held that disclosure was required.

■ The *Hodge and Zweig* case is instructive on a further point. The term "exception" has been used to describe the failure of the privilege when crime or fraud is involved. As the Ninth Circuit indicates, the matter fails to become privileged in the

first instance if the attorney-client relationship was formed to further criminal conduct. This proposition follows from the classical definition of the privilege which lists as one of its elements the propriety of the otherwise privileged communication.

"The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

*United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass. 1950), quoted in *N.L.R.B. v. Harvey*, 349 F.2d 900, 904 (4th Cir.1965). Hence, if an otherwise privileged communication was made for the purpose of committing a crime or tort then there has been "a failure of one of the essential preconditions of the privilege," *Hodge and Zweig*, at 1355, and the communication is unprotected. *Accord, In Re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir.1984).

█ The Court is satisfied that the Government has made a *prima facie* showing that a criminal organization had expressly, or by practice, developed a plan to obtain legal services for its "soldiers" in furtherance of its criminal activities. The Government attached to its motion the transcript of grand jury testimony given by a bondsman who gave the bond for A.D.; the sworn statement of a distributor who refers to an agreement to provide legal assistance; and the grand jury testimony of an organization member who was provided with an attorney. The latter individual has since pled guilty to a count of the indictment currently pending in this action.

Moreover, as previously mentioned, the grand jury has returned an indictment which includes as part of its conspiracy count a charge that part of the conspiracy was for the organization to provide legal assistance and bail to those members who ran afoul of the law. Considering all the evidence, the Court finds the Government to have met its *prima facie* burden.

John Doe also argues that he is bound by Canon 4 of the Code of Professional Responsibility which commands that "[a] lawyer should preserve the confidences and secrets of a client." A similar argument was made in *Harvey*. The Fourth Circuit summarily disposed of it by noting that the canon "does not purport to state the law governing the attorney-client privilege." 349 F.2d at 906. This Court, as did the *Harvey* court, finds the attorney's desire to remain faithful to the canon and his former client to be commendable. Indeed, at this point the Court pauses to emphasize that the conduct of John Doe is not being questioned here. If Doe was involved in wrongdoing by his client, it was unitiated by him and unbeknown to him. Mr. Doe is a respected member of the bar and merely did what any criminal lawyer would do: Provide legal services to one in need upon request. That he may have been a pawn in a larger criminal scheme does not in any way reflect unfavorably upon him. It does, however, require him to appear before the grand jury.

In conducting the above discussion, the Court has assumed that there was an attorney-client relationship between Doe and B.P. Under similar facts in *Pavlick*, the concurring judges, in an *en banc* decision, opined that no relationship was established. They contended that even if the anonymous fee-payer was in other respects a client of the attorney, he was not the client with respect to the matter for which the fee was paid and for which the attorney was to be interrogated. The three individuals who were the beneficiaries of the attorney's services were the clients. Because those three had waived the attorney-client privilege and because the unnamed client had

failed to establish an attorney-client relationship, the concurring judges believed it unnecessary to discuss whether the legal services were provided pursuant to a conspiracy. Since the conclusion reached by this type of reasoning would not change the result in this case, the Court merely notes this further support for the decision announced today and concludes.

### III. *Conclusion*

For the foregoing reasons, the Court finds the failure of a precondition to the attorney-client privilege: That the relationship be entered into in furtherance of a crime or fraud. Accordingly, the Court grants the motion of the Government and ORDERS John Doe to appear before the grand jury upon notice given by the Government and to answer those questions propounded to him at that time.